JOHN R. KUCAN, JR., AND TERRY COATES, PLAINTIFFS V. ADVANCE AMERICA, CASH
ADVANCE CENTERS OF NORTH CAROLINA, INC.; ADVANCE AMERICA, CASH
ADVANCE CENTERS, INC.; AND WILLIAM M. WEBSTER, IV, DEFENDANTS

---

LISA HAGER AND IRA NEBRASKA HALL, ON BEHALF OF THEMSELVES AND ALL OTHER PER-
SONS SIMILARLY SITUATED, PLAINTIFFS V. CHECK INTO CASH OF NORTH CAROLINA,
INC., CHECK INTO CASH, INC., JONES MANAGEMENT SERVICES, LLC,
W. ALLAN JONES, AND STEPHEN M. SCOGGINS, DEFENDANTS

---

ADRIANA McQUILLAN AND SANDRA K. MATTHIS, ON BEHALF OF THEMSELVES AND ALL
OTHER PERSONS SIMILARLY SITUATED, PLAINTIFFS V. CHECK 'N GO OF NORTH CAR-
OLINA, INC.; CNG FINANCIAL CORPORATION; JARED A. DAVIS AND A. DAVID
DAVIS, DEFENDANTS

No. COA06-447
No. COA06-505
No. COA06-506

(Filed 6 May 2008)

**Unfair Trade Practices— check cashing—waiver of class ac-
tion—test for unconscionability**

A case involving check cashing businesses and agreements
with waivers of class actions was remanded where the trial court
acted before the new test of unconscionability promulgated in
*Tillman v. Commercial Credit Loans, Inc.*, 362 NC 93.

Appeal by plaintiffs from orders entered 12 January 2006 by
Judge D. Jack Hooks, Jr. in New Hanover County Superior Court.
Heard in the Court of Appeals 9 January 2007.

*Hartzell & Whiteman, L.L.P., by J. Jerome Hartzell; North
Carolina Justice Center, by Carlene McNulty; Trial Lawyers for
Public Justice, by F. Paul Bland, Jr. and Richard Frankel;
Financial Protection Law Center, by Mallam J. Maynard;
Wallace & Graham, P.A., by Mona Lisa Wallace and John
Hughes; Richard Fisher Law Office, by Richard A. Fisher, for
plaintiff-appellants.*

*Womble Carlyle Sandridge & Rice, PLLC, by Johnny M. Loper;
Skadden, Arps, Slate, Meagher & Flom, LLP, by Saul M. Pilchen,
Pro Hac Vice; Marshall, Williams & Gorham, LLP, by Lonnie B.
Williams and John L. Coble, for defendant-appellees Advance
America, Cash Advance Centers of North Carolina, Inc.;
Advance America, Cash Advance Centers, Inc.; and William M.
Webster, IV.*

KUCAN v. ADVANCE AM.

[190 N.C. App. 396 (2008)]

*Poyner & Spruill, LLP, by Edwin M. Speas, Jr. and David M. Barnes; Manatt, Phelps & Phillips, LLP, by Claudia Callaway, for defendant-appellees Check Into Cash of North Carolina, Inc., Check Into Cash, Inc., Jones Management Services, LLC. W. Allan Jones, and Stephen M. Scoggins.*

*Kilpatrick Stockton, LLP, by Alan D. McInnes, Alfred P. Carlton, Jr., and Gregg E. McDougal; Squire, Sanders & Dempsey, LLP, by Amy L. Brown and Pierre H. Bergeron, for defendant-appellees Check 'n Go of North Carolina, Inc.; CNG Financial Corporation, Jared A. Davis, and A. David Davis.*

*Yolanda D. McGill and Jonas Monast, for Center for Responsible Lending, amicus curiae.*

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Gary R. Govert and Assistant Attorney General Philip A. Lehman, amicus curiae (COA06-447).*

*Director Deborah M. Weissman and Certified Law Student David Donovan, for University of North Carolina School of Law Clinical Programs; Holly M. Bryan for North Carolina Academy of Trial Lawyers, amicus curiae (COA06-506).*

*Edelstein and Payne, by M. Travis Payne, for AARP, amicus curiae (COA06-505 and COA06-506).*

HUNTER, Judge.

(The three above-captioned cases were consolidated for discovery, hearings, and this appeal.)

All three sets of above-named plaintiffs ("Kucan," "Hager," and "McQuillan," respectively) commenced their actions in New Hanover County Superior Court on 27 July 2004, alleging that the lending practices of each defendant ("Advance America," "Check Into Cash," and "Check 'n Go," respectively) violated, among other statutes, the North Carolina Consumer Finance Act, Check Cashing Statute, and Unfair Trade Practice Statute. N.C. Gen. Stat. §§ 53-166(a) & (b), 53-276-283, 75-1.1 (2007). Plaintiffs sought an injunction against defendants and certification as a class for further litigation; defendants moved to compel arbitration as required by the respective written loan agreements signed by plaintiffs and defendants. The cases were consolidated for discovery and hearings by the court because they presented very similar issues. On 30 December 2005, the trial court denied class certification and compelled arbitration. All plaintiffs appealed.

## I.

Findings made by the trial court tended to show the following facts. Each defendant company conducts business in the same way: A customer presents a check for an amount that includes the cash he wishes to receive plus a finance charge. Defendant company promises not to present the check for payment for up to fourteen days. If the customer does not return at that time (i.e., the date the loan is due), defendant company deposits the check. If the customer can neither pay the loan nor cover the amount of the check were it to be presented, defendant companies allow the customer to take out a new loan for an additional fee.

All plaintiffs obtained loans in varying amounts from their respective defendants. Specifically, from defendant Check Into Cash: Between June 2002 and January 2004, plaintiff Hager obtained five loans, each for $300.00, with a fee of $54.00; in March 2002, plaintiff Hall obtained one loan for $300.00, with a fee of $52.94. From defendant Advance America: Between May 2003 and August 2004, plaintiff Kucan obtained sixteen loans, each for $425.00 and incurring a fee of $75.00; in December 2003, plaintiff Coates obtained one loan for $200.00 with a fee of $35.00, followed by two rollovers for $300.00, each incurring a fee of $52.50. From defendant Check 'n Go: Beginning in August 2001, plaintiff McQuillan obtained forty-six loans for either $425.00, with a fee of $76.50, or $300.00, with a fee of $50.00; beginning in May 2004, plaintiff Matthis obtained approximately ten loans for either $200.00, with a fee of $36.00, or for $225.00, with a fee of $40.50.

In order to receive funds, all customers were required to sign forms that contained clauses requiring customers to submit disputes to arbitration and prohibiting customers from participating in class action suits against the company. The relevant portion of the agreement between plaintiff McQuillan and defendant Check 'n Go states:

AGREEMENT TO ARBITRATE ALL DISPUTES: You and we agree that any and all claims, disputes or controversies between you and us . . . shall be resolved by binding individual (and not joint) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") . . . . This agreement to arbitrate all disputes shall apply no matter by whom or against whom the claim is filed . . . . Your arbitration fees may be waived by the NAF in the event you cannot afford to pay them. The cost of any participatory, documentary or telephone hearing, if one is held at

your or our request, will be paid for solely by us as provided in the NAF Rules . . . .

> NOTICE: YOU AND WE WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND HAVE A JUDGE OR JURY DECIDE THE DISPUTES BUT HAVE AGREED INSTEAD TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION.

AGREEMENT NOT TO BRING, JOIN OR PARTICIPATE IN CLASS ACTIONS: To the extent permitted by law, you agree that you will not bring, join or participate in any class action as to any claim, dispute or controversy you may have against us . . . . This Agreement does not constitute a waiver of any of your rights and remedies to pursue a claim individually and not as a class action in binding arbitration as provided above.

The relevant portion of the agreement between plaintiff Kucan and defendant Advance America is titled "WAIVER OF JURY TRIAL AND ARBITRATION AGREEMENT" and states:

[2.] You acknowledge and agree that by entering into this Arbitration Provision:

(a) YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;

(b) YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and

(c) YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

3. Except as provided in Paragraph 6 below, all disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE,

KUCAN v. ADVANCE AM.

[190 N.C. App. 396 (2008)]

AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.

. . .

6. All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, <u>shall</u> be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal <u>shall</u> be resolved by binding arbitration.

The relevant portion of the agreement between plaintiff Hager and defendant Check Into Cash is titled "ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL" and states:

3. **Waiver of Jury Trial and Participation in Class Action**. You acknowledge and agree that by entering into this Arbitration Agreement:

(a) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;

(b) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS COURT, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and

(c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

4. **No Class Arbitration**. Except as provided in Paragraph 7 below, all disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.

. . .

6. **Payment of Arbitration Fees**. Regardless of who demands arbitration, at your request we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees . . . . Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses[.]

7. **Small Claims Court**. All parties, including related third parties, shall retain the right to seek adjudication in a small claims court for disputes within the scope of such court[']s jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims court, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims court shall be resolved by binding arbitration de novo (i.e. upon a fresh review of the facts).

## II. *Tillman*

On 25 January 2008, our Supreme Court filed an opinion in *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 655 S.E.2d 362 (2008), <u>agreeing with the result reached by the dissenting opinion from this Court in *Tillman v. Commercial Credit Loans, Inc.*, 177 N.C. App. 568, 629 S.E.2d 865 (2006)</u>. Because that case provides a new method of analysis for cases going forward, it behooves us to summarize the reasoning of that case before delving into the one at hand.

The parties in *Tillman* were in much the same position as those in this case; the plaintiffs were borrowers looking to invalidate binding arbitration provisions in their loan agreements on the grounds that they were unconscionable, and the defendants were the lenders from whom the loans were taken. The defendants made a motion to compel arbitration; that motion was denied by the trial court on the basis that the arbitration clause was unconscionable and therefore unenforceable. The defendants appealed, and a split panel of this Court reversed the trial court's order. *Tillman*, 177 N.C. App. at 569, 629 S.E.2d at 867-68. The plaintiffs appealed to the Supreme Court.

### A. New Test for Unconscionability

The Court began its analysis by clarifying that the issue before it was whether the arbitration clause in the loan agreement was unconscionable. *Tillman*, 362 N.C. at 94, 655 S.E.2d at 365. The Court then stated: "Because the clause is one-sided, prohibits joinder of claims and class actions, and exposes claimants to prohibitively high costs,

KUCAN v. ADVANCE AM.

[190 N.C. App. 396 (2008)]

we hold that the trial court did not err in concluding as a matter of law that the clause is unconscionable." *Id.*

Before considering the issues of procedural and substantive unconscionability, the Court outlined a sliding-scale test for evaluating these two factors:

> [W]e note that while the presence of both procedural and substantive problems is necessary for an ultimate finding of unconscionability, such a finding may be appropriate when a contract presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa. . . .
>
> We conclude that, taken together, the oppressive and one-sided substantive provisions of the arbitration clause at issue in the instant case and the inequality of bargaining power between the parties render the arbitration clause in plaintiffs' loan agreements unconscionable.

*Id.* at 103, 655 S.E.2d at 370 (citation omitted).

### B. Procedural Unconscionability

As to procedural unconscionability, the Supreme Court held that the following three findings of fact, made by the trial court and supported by competent evidence in the record, made a "sufficient showing to establish procedural unconscionability":

> "[(1) plaintiffs] were rushed through the loan closings, and the [defendant's] loan officer indicated where [plaintiffs] were to sign or initial the loan documents. There was no mention of [the disputed terms] at the loan closings." [(2)] In addition, defendants admit that they would have refused to make a loan to plaintiffs rather than negotiate with them over the terms of the arbitration agreement. [(3)] Finally, the bargaining power between defendants and plaintiffs was unquestionably unequal in that plaintiffs are relatively unsophisticated consumers contracting with corporate defendants who drafted the arbitration clause and included it as boilerplate language in all of their loan agreements.

*Id.* (quoting finding of fact from trial court order).

### C. Substantive Unconscionability

As to substantive unconscionability, the Supreme Court gave three overarching reasons that combined to produce substantive unconscionability:

(1) the arbitration costs borrowers may face are "prohibitively high"; (2) "the arbitration clause is excessively one-sided and lacks mutuality"; and (3) the clause prohibits joinder of claims and class actions. We agree that here, the collective effect of the arbitration provisions is that plaintiffs are precluded from "effectively vindicating [their] . . . rights in the arbitral forum."

*Id.* at 104, 655 S.E.2d at 370-71 (citation omitted; alteration in original).

As to the first reason—the prohibitively high cost of arbitration—the Court noted:

the combination of the loser pays provision, the *de novo* appeal process, and the prohibition on joinder of claims and class actions creates a barrier to pursuing arbitration that is substantially greater than that present in the context of litigation. We agree with the trial court that "[d]efendant's arbitration clause contains features which would deter many consumers from seeking to vindicate their rights."

*Id.* at 106, 655 S.E.2d at 372.

As to the second reason given regarding substantive unconscionability—that " 'the arbitration clause is excessively one-sided and lacks mutuality' "—the Court stated simply that "every time defendants have taken legal action against a borrower, they have managed to avoid application of the arbitration clause." *Id.* at 107, 655 S.E.2d at 372.

Finally, the Court stated that the third reason—"the clause prohibits joinder of claims and class actions"—"affects the unconscionability analysis in two specific ways":

First, the prohibition contributes to the financial inaccessibility of the arbitral forum as established by this arbitration clause because it deters potential plaintiffs from bringing and attorneys from taking cases with low damage amounts in the face of large costs that cannot be shared with other plaintiffs. Second, the prohibition contributes to the one-sidedness of the clause because the right to join claims and pursue class actions would benefit only borrowers.

*Id.* at 108, 655 S.E.2d at 373.

The Court concluded by stating that "we hold that the provisions of the arbitration clause, taken together, render it substantively

unconscionable because the provisions do not provide plaintiffs with a forum in which they can effectively vindicate their rights."[1] *Id.*

## III.

The same argument is made by all plaintiffs as to the trial court's denial of class certification—specifically, that the trial court erred by denying class certification on the basis of the class action ban because undisputed evidence was presented that the class action ban deprives borrowers of the protection and penalties of North Carolina law. As is evident from the outline of *Tillman* above, that opinion imposes a new framework on the case at hand. Because the lower court did not have the benefit of the new test for unconscionability promulgated in *Tillman* at the time it made its holdings, its findings of fact and conclusions of law do not fit the framework and new test precisely enough for us to review the orders on appeal. In light of this, we remand this case so that the superior court may reexamine the facts in light of *Tillman.*

Remanded.

Judges WYNN and STEELMAN concur.

---

1. The Supreme Court's votes were split 3-2-2 in this case, meaning that the preceding analysis is of a plurality, not a majority. However, the concurrence by Justice Edmunds follows essentially the same reasoning as the plurality opinion discussed above. The primary difference between the two is that, where the plurality adopted the balancing approach set out in 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 4-7, at 315 (5th ed. 2006), and a case from Washington, the concurrence relies solely on the reasoning of the opinion in *Brenner v. School House, Ltd.*, 302 N.C. 207, 274 S.E.2d 206 (1981). In *Brenner*, the Court set out a "totality of the circumstances" test that required examination of the circumstances of the contract to determine whether both procedural and substantive unconscionability exist. *Id.* at 213, 274 S.E.2d at 210. In application, it is for practical purposes almost identical to the test outlined by the plurality opinion. In his concurrence, Justice Edmunds sets out the totality of the circumstances test and then examines many of the same facts as the plurality, particularly emphasizing the high cost of arbitration, before concluding that the circumstances around the contract "effectively prevented plaintiffs from vindicating their rights under the contract in any forum" and, thus, the contract was unconscionable. *Tillman*, 362 N.C. at 109-11, 655 S.E.2d at 374 (Edmunds, J., concurring).