NANCY JO CHAPMAN WESTMORELAND, EXECUTOR OF THE ESTATE OF JAMES ROBERT CHAPMAN, DECEASED, PLAINTIFF V. HIGH POINT HEALTHCARE INC. AND HERITAGE HEALTHCARE OF HIGH POINT, LLC, DEFENDANTS

NO. COA10-1103

(Filed 17 January 2012)

### 1. Appeal and Error—interlocutory orders and appeals— substantial right—denial of motion to stay proceedings for arbitration

An order denying a motion to stay proceedings so that the dispute could be arbitrated affected a substantial right and was immediately appealable under N.C.G.S. § 7A-927(d)(1).

**2. Arbitration and Mediation—arbitration agreement—procedural and substantive unconscionability**

A *de novo* review revealed that the trial court erred in a wrongful death case by concluding that several factors of an arbitration agreement supported findings of both procedural and substantive unconscionability under *Tillman*, 362 N.C. 93. Plaintiff did not establish a *prima facie* case of bargaining inequality merely because an "ordinary consumer" was negotiating with a "sophisticated health care services provider." Further, the circumstances surrounding execution of the agreement did not excuse an apparent failure to read it.

**3. Arbitration and Mediation—arbitration agreement—totality of circumstances—balancing test**

A totality of circumstances test revealed that plaintiff failed to demonstrate that an inequality of a bargain was so manifest as to shock the judgment of a person of common sense and that the terms of an arbitration agreement were so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.

Appeal by defendant from denial of motion to compel arbitration entered 12 April 2010 by Judge John O. Craig III in Guilford County Superior Court. Heard in the Court of Appeals 23 March 2011.

*Alexander Ralston, Speckhard & Speckhard, L.L.P., by Stanley E. Speckhard, for plaintiff-appellee.*

*Arnall, Golden, Gregory, L.L.P., by W. Jerad Rissler, and Harris, Creech, Ward & Blackerby, P.A., by Bonnie J. Refinski-Knight, Esq., for defendant-appellants.*

STEELMAN, Judge.

Decedent's power of attorney executed an arbitration agreement after decedent was admitted to defendant's nursing facility. The agreement provided that its execution was not a prerequisite to decedent being admitted or remaining in the facility. Plaintiff failed to meet her burden of proof to show that the agreement was procedurally and substantively unconscionable. The order of the trial court denying defendant's motion to compel arbitration is reversed.

## I.  Factual and Procedural Background

On 17 July 2006, Nancy Jo Chapman Westmoreland, as attorney in fact for her father, James Robert Chapman ("Chapman"), placed him in a nursing facility owned by High Point Healthcare, Inc. ("defendant").

On 18 July 2006, Westmoreland as her father's power of attorney was presented with several documents for her signature, one of which was an arbitration agreement (the "Arbitration Agreement"). The Arbitration Agreement was a separate agreement, labeled as such in bold lettering.[1] It provided that any claims between the parties would be resolved by binding arbitration and that the parties waived their right to trial before a jury or judge. The agreement explicitly stated that execution of the Arbitration Agreement was not a condition to Chapman being admitted to or remaining in the facility. Westmoreland as power of attorney executed this document, and Chapman remained at the facility until his death on 12 September 2007.

On 15 September 2009, Westmoreland, acting as executor of her father's estate (hereinafter referred to as "plaintiff" when acting in this capacity) filed a complaint in the Superior Court of Guilford County seeking monetary damages based upon allegations that Chapman's death was proximately caused by the negligence of defendant. On 16 October 2009, defendant moved to dismiss the complaint or stay the proceedings and compel arbitration.

The motion to compel arbitration was heard on 9 December 2009. On 14 April 2010, the trial court entered a written order denying defendant's motion to dismiss or to compel arbitration, ruling that the Arbitration Agreement was both procedurally and substantively unconscionable.

Defendant appeals.

## II.  Interlocutory Appeal

[1] The trial court's order is not a final disposition of this case and is an interlocutory order. *See Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). However, our courts have held that an order denying a motion to stay proceedings so that the dispute can be arbitrated affects a substantial right and is immediately appealable pursuant to N.C. Gen. Stat. § 7A-27(d)(1) (2009). *See Barnhouse v. Am. Express Fin. Advisors, Inc.*, 151 N.C. App. 507, 508, 566 S.E.2d 130, 131 (2002).

---

1. A copy of the entire Arbitration Agreement is attached to this opinion.

### III. Arbitration Agreement

**[2]** In its first argument, defendant contends that the trial court erred in concluding that the Arbitration Agreement was unconscionable. We agree. This issue is dispositive; therefore, we do not address defendant's remaining arguments on appeal.

### A. Standard of Review

Unconscionability is a question of law that is reviewed *de novo* on appeal. *Tillman v. Commercial Credit Loans*, 362 N.C. 93, 101, 655 S.E.2d 362, 369 (2008) (plurality opinion). Under *de novo* review, we consider the matter anew and are free to substitute our judgment for that of the trial court. *Blow v. DSM Pharm., Inc.*, 197 N.C. App. 586, 588, 678 S.E.2d 245, 248 (2009). The trial court's findings of fact that are supported by competent evidence are binding on appeal even if there is evidence to support findings to the contrary. *Tillman*, 362 N.C. at 100–01, 655 S.E.2d at 369. The labels "findings of fact" and "conclusions of law" employed by the trial court in a written order do not determine the nature of our review. *See Peters v. Pennington*, ___ N.C. App. ___, ___, 707 S.E.2d 724, 735 (2011) (reviewing what was labeled as a "conclusion of law" as a finding of fact). If the trial court labels as a finding of fact what is in substance a conclusion of law, we review that "finding" *de novo*. *See id.*

### B. Analysis

There is no issue as to whether the parties entered into the Arbitration Agreement. The trial court found as a fact that Westmoreland executed the Arbitration Agreement in her capacity as attorney in fact for her father. The trial court specifically rejected plaintiff's argument that as power of attorney, she had no authority to bind the estate to arbitrate a wrongful death claim. On appeal, plaintiff does not argue this as an alternative basis for upholding the ruling of the trial court pursuant to Rule 28(c) of the Rules of Appellate Procedure. Thus, this issue is not before us.

"North Carolina has a strong public policy favoring arbitration." *Raper v. Oliver House, LLC*, 180 N.C. App. 414, 419, 637 S.E.2d 551, 554 (2006) (quoting *Red Springs Presbyterian Church v. Terminix Co.*, 119 N.C. App. 299, 303, 458 S.E.2d 270, 273 (1995)); *cf. Tillman*, 362 N.C. at 101, 655 S.E.2d at 369 ("Arbitration is favored in North Carolina."). As the Supreme Court of Alabama explained, "[t]here is nothing inherently unfair or oppressive about arbitration clauses, and arbitration agreements are not in themselves unconscionable." *Blue*

*Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077, 1086 (Ala. 2005) (citation omitted).

A contract is unconscionable, and therefore unenforceable under equitable principles,

> only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.

*Brenner v. Little Red Sch. House Ltd.*, 302 N.C. 207, 213, 274 S.E.2d 206, 210 (1981), *quoted with approval in Tillman*, 362 N.C. at 101–02, 655 S.E.2d at 369. "An inquiry into unconscionability requires that a court 'consider all the facts and circumstances of a particular case,' and '[i]f the provisions are then viewed as so one-sided that the contracting party is denied any opportunity for a meaningful choice, the contract should be found unconscionable.' " *Tillman*, 362 N.C. at 102, 655 S.E.2d at 369 (alteration in original) (quoting *Brenner*, 302 N.C. at 213, 274 S.E.2d at 210).

The leading case in North Carolina on the unconscionability of arbitration agreements is *Tillman v. Commercial Credit Loans, Inc.* In that case, a plurality of three justices concurred in the decision of the Court, two justices concurred in the result only, and two justices dissented. *See Kucan v. Advance Am.*, 190 N.C. App. 396, 404 n.1, 660 S.E.2d 98, 103 n.1 (2008) (explaining that the analysis of the three-justice *Tillman* opinion was "of a plurality, not a majority"). The plurality opinion stated that unconscionability was an affirmative defense and that the party asserting that defense has the burden of establishing that the agreement was unconscionable. *Tillman*, 362 N.C. at 102, 655 S.E.2d at 369. The plurality further stated that to establish unconscionability, a party must demonstrate both procedural unconscionability and substantive unconscionability. *Id.* at 102, 655 S.E.2d at 370 (citing *Martin v. Sheffer*, 102 N.C. App 802, 805, 403 S.E.2d 555, 557 (1991); 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 4-7, at 315 (5th ed. 2006)). Under the plurality's rationale, both elements must be present, but a court may rule a contract is unconscionable "when [the] contract presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa." *Id.* at 103, 655 S.E.2d at 370.

A majority of the Court held that the arbitration agreement was unconscionable and therefore unenforceable. *Id.* at 108, 655 S.E.2d at

373. The concurring opinion agreed that the contract was unconscionable, but opined that the determination of unconscionability should be based upon a totality of the circumstances test, as set forth in *Brenner v. Little Red School House, Ltd. Tillman*, 362 N.C. at 109, 655 S.E.2d at 374 (Edmunds, J., concurring). Notably, *Tillman* was the first case where a North Carolina appellate court found a contract to be unconscionable. *Id.* at 111–12, 655 S.E.2d at 375 (Newby, J., dissenting) (making this observation).

Both the plurality and the concurring opinions focused upon the same factors in reaching their decision that the arbitration agreement in *Tillman* was unconscionable. In order to cover all possible modes of analysis in this case, we will first analyze this case under the two-part test posited by the plurality. We will then consider the trial court's order under the totality of the circumstances test posited by the concurring opinion.

### 1. Procedural Unconscionability

"[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." *Id.* at 102–03, 655 S.E.2d at 370 (plurality opinion) (citing *Rite Color Chem. Co. v. Velvet Textile Co.*, 105 N.C. App. 14, 20, 411 S.E.2d 645, 648 (1992)). In *Tillman*, the Supreme Court plurality found procedural unconscionability based on five factors; (1) the plaintiffs were rushed through the loan closing: (2) the closing officer indicated where to sign; (3) there was no mention of the offending terms at the closing; (4) the defendants admitted they would have refused to make the loan rather than negotiate terms of the arbitration agreement; and (5) "the bargaining power between [the] defendants and [the] plaintiffs was unquestionably unequal in that [the] plaintiffs [were] relatively unsophisticated consumers contracting with corporate defendants who drafted the arbitration clause and included it as boilerplate language in all of their loan agreements." *Id.* at 103, 411 S.E.2d at 370. The instant case lacks several of the indicia of procedural unconscionability that were present in *Tillman*.

An imbalance in bargaining strength is one of many factors that must be considered to determine whether there is procedural unconscionability. *See id.* But bargaining inequality alone generally cannot establish procedural unconscionability. Otherwise, procedural unconscionability would exist in most contracts between corporations and consumers. There would nearly always be some degree of

"inequality of bargaining power." The trial court held that because plaintiff was an "ordinary consumer" and defendant was a "sophisticated health care services provider" that there existed a *prima facie* inequality of bargaining power." We note that, while this statement was contained in the trial court's findings of fact, this is a legal conclusion to which we accord no deference on appeal. *See Pennington*, ___ N.C. App. at ___, 707 S.E.2d at 735.

This is not, and has never been the law in North Carolina. Whether there is bargaining inequality must be evaluated on a case-by-case basis; this inquiry turns on the specific facts of each case. The trial court erred in holding that plaintiff had established a *prima facie* case of bargaining inequality merely because an "ordinary consumer" was negotiating with a "sophisticated health care services provider."

The balance of the trial court's findings pertaining to procedural unconscionability deal with the execution of the documents. The trial court found that Westmoreland acting as attorney-in-fact for her father was told that the documents had to be signed to accomplish the admission of Chapman to the facility; that there was no discussion of the Arbitration Agreement; that she had no independent understanding of arbitration; and that she would not have signed the document had she understood that she was giving up Chapman's right to a jury trial. The trial court acknowledged that based upon the provisions of the Arbitration Agreement, it was not true that the admission of Chapman to the facility was contingent upon execution of the Arbitration Agreement. Paragraph 8 of the Arbitration Agreement was in boldface and capital type, and reads as follows:

**8. <u>Right To Consultation.</u> The Resident understands that the Resident has the right to consult an attorney or his or [sic] her choice about this Arbitration Agreement and to receive and [sic] explanation or clarification from the Facility's admissions coordinator. The Resident is not required to sign this Arbitration Agreement in order to be admitted to or to remain in the Facility.**

BY SIGNING THIS AGREEMENT, THE RESIDENT ACKNOWLEDGES THAT THE RESIDENT HAS HAD THE OPPORTUNITY TO READ THIS AGREEMENT OR IT HAS BEEN READ TO THE RESIDENT AND THE RESIDENT UNDERSTANDS ITS CONTENTS.

This paragraph contains three essential provisions: (1) it advised plaintiff of her right to consult with an attorney about the Arbitration

Agreement; (2) it advised her of the right to receive an explanation or clarification from the admissions coordinator; and (3) it provided that she was not required to sign the Arbitration Agreement for her father to be admitted to the facility. In North Carolina, parties to a contract have an affirmative duty to read and understand a written contract before they sign it. *Breece v. Standard Oil Co. of N.J.*, 209 N.C. 527, 530, 184 S.E. 86, 88 (1936).

It has long been the law in North Carolina that "the law will not relieve one who can read and write from liability upon a written contract, upon the ground that he did not understand the purport of the writing, or that he has made an improvident contract, when he could inform himself and has not done so." *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 213, 652 S.E.2d 701, 712 (2007) (quoting *Oliver House*, 180 N.C. App. at 421, 637 S.E.2d at 555) (internal quotation marks omitted). In *Weaver*, the plaintiff asserted that a release was an unconscionable contract. In rejecting this argument, this Court relied upon the above-cited law. *Id.* Where the terms and conditions of an agreement are clear and unequivocal, and are further highlighted in bold and capital typeface, a party cannot come into court and complain that an agreement is unconscionable because she failed to read it. Further, where the agreement affirmatively advises a party to seek legal advice or to consult with the admissions coordinator if she has any questions, that party cannot now assert that the agreement was unconscionable because she did not understand its terms.

Plaintiff failed to meet her burden of proving that the Arbitration Agreement was procedurally unconscionable. The trial court erred in concluding as a matter of law that the Arbitration Agreement was procedurally unconscionable. The factors cited in *Tillman* as supporting procedural unconscionability are not present in the instant case. The Arbitration Agreement specifically provided that the admission of the patient was not dependent upon execution of the agreement by Westmoreland as attorney-in-fact for Chapman. The circumstances surrounding the execution of the Arbitration Agreement do not excuse Westmoreland's apparent failure to read it.

This case is further distinguishable from *Tillman* on a number of grounds. In the instant case, the trial court did not find that plaintiff was rushed through the signing process. Defendants did not admit that they would have refused to admit plaintiff's father had she refused to sign the Arbitration Agreement. In fact, the plain language of the Arbitration Agreement supports a contrary finding. Moreover,

Chapman had *already been admitted* to the facility at the time of execution of the Arbitration Agreement. In light of the differences between this case and *Tillman*, particularly the provisions clearly advising plaintiff of three distinct rights, including that admission to or remaining in the facility was not contingent upon execution of the Arbitration Agreement, we discern no procedural unconscionability in the execution of the Arbitration Agreement. The trial court erred in holding that the agreement was procedurally unconscionable due to bargaining naughtiness.

### 2. Substantive Unconscionability

"Substantive unconscionability . . . refers to harsh, one-sided, and oppressive contract terms." *Tillman*, 362 N.C. at 103, 655 S.E.2d at 370 (citing *Rite Chem. Co.*, 105 N.C. App. at 20, 411 S.E.2d at 648–49).

The trial court based its conclusion of substantive unconscionability upon three factors: (1) the policy of the American Arbitration Association against arbitrating negligent health care claims under pre-dispute arbitration agreements; (2) the allocation of benefits and detriments; and (3) the cost-shifting provisions under the Arbitration Agreement. This analysis was in error.

### a. The Policy of the American Arbitration Association Not to Arbitrate Certain Claims

The arbitration agreement provides:

2. <u>Proceeding.</u> Any arbitration proceeding that takes place under this **Arbitration Agreement** shall follow the rules of the American Arbitration Association ("AAA") and any resulting decision shall be enforceable by a court of competent jurisdiction. The **arbitration** proceeding shall be conducted where the Facility is located or as close to the Facility as practical. The arbitration proceeding shall be conducted before one neutral arbitrator selected in accordance with the rules of the AAA. The parties agree to bear their own attorneys' fees and costs associated with the **arbitration** proceeding.

The parties stipulated before the trial court that "it was, and remains, the policy of the American Arbitration Association . . . not to arbitrate disputes between health care providers and health care recipients where, as here, the arbitration agreement was signed prior to the occurrence of the facts leading to the dispute . . . ."

The trial court concluded that AAA "does not consider pre-dispute arbitration agreements to be an appropriate methodology or forum for dispute resolution between health care providers and recipients, thereby rendering performance of the agreement impossible." The trial court also found that this was a factor to be considered in determining whether the Arbitration Agreement was unconscionable.

We first must determine whether the AAA policy rendered performance of the Arbitration Agreement impossible. This issue was considered by the Supreme Court of Alabama in the case of *Blue Cross Blue Shield v. Rigas*. In that case, the trial court denied the defendant's motion to compel arbitration. The plaintiff argued that AAA's Health Care Policy Statement of 2003 precluded AAA from arbitrating the case. On appeal, the Supreme Court of Alabama reversed the trial court, holding that the health care policy only indicated that AAA would not accept administration of certain types of cases, but that it did not preclude arbitration of the claims by a non-AAA arbitrator. The plaintiff's arguments that AAA's policy statement meant that the claims were not subject to arbitration were specifically rejected by the court. *Rigas*, 923 So. 2d at 1092.

We hold the logic of the *Rigas* decision to be compelling. In the instant case, as was the case in *Rigas*, the Arbitration Agreement required that the rules of AAA be followed. In addition, the agreement provided that the arbitrator be selected "in accordance with the rules of the AAA." The agreement did not provide that a AAA arbitrator must be used to conduct the arbitration. AAA's policy did not render the performance of the Arbitration Agreement impossible. It simply meant that the arbitration could not be conducted under the auspices of AAA.

We further note that the AAA policy statement is in direct conflict with North Carolina's strong public policy in favor of arbitration. *See, e.g., Oliver House*, 180 N.C. App. at 419, 637 S.E.2d at 554. It is the role of the courts of North Carolina to determine, on a case-by-case basis, whether an arbitration agreement is unconscionable. The courts of North Carolina will not abdicate this decision to AAA.

We hold that the trial court erred in concluding that performance of the Arbitration Agreement was impossible due to the polices of AAA. We also hold that the trial court erred in concluding that the AAA policy statement—which conflicts with this State's public policy in favor of arbitration—weighed in favor of ruling that the Arbitration Agreement was substantively unconscionable.

### b. Mutuality of the Agreement

The trial court found that:

> While the arbitration agreement on its face is mutually agreed upon (*i.e.*, as written, no claims are exempted from its scope and its terms are applicable to both parties), in practice, the arbitration agreement is unconscionably one-sided. The agreement requires Defendants to arbitrate "claim[s] for payment, nonpayment, or refund for services rendered to the Resident by the Facility." Given that Defendants received payment in full each month through Social Security receipts and insurance (including Medicaid), Defendants have, in reality, nothing of significance to arbitrate. On the other hand, Mr. Chapman is required to arbitrate "violations of any right granted to the Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice, or any other claim based on any departure from accepted standards of medical or health or safety whether sounding in tort or contract." As there are no significant claims that Defendant could pursue that would be subject to arbitration, while at the same time, virtually every conceivable claim of substance that Plaintiff could make is subject to arbitration, the arbitration agreement is excessively one-sided and the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, such that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other. (Alteration in original.)

This finding attempted to bring this case under the substantive unconscionability analysis of *Tillman* based upon the agreement being one-sided. However, the agreement in the instant case bears little resemblance to that found in *Tillman*.

In *Tillman*, the arbitration agreement exempted from its operation "foreclosure actions and actions in which the total damages, costs, and fees do not exceed $15,000." *Tillman*, 362 N.C. at 107, 655 S.E.2d at 372. The plurality opinion reasoned that "the exceptions appear to be designed far more for the benefit of [the] defendants than for [the] plaintiffs." *Id.* at 107, 655 S.E.2d at 373. The one-sidedness of the agreement was a factor in the plurality's holding that the arbitration agreement was unconscionable. *Id.*

There is no such exclusion in the Arbitration Agreement at issue in the instant case. The trial court recognized this fact. However, the trial court sought to find a one-sided provision by concluding that the only possible claim that defendant could have against Chapman would be for payment for residing at the facility, and then determining that social security, Medicaid, and insurance paid these charges each month on behalf of Chapman.

This analysis is flawed for two reasons. First, after being admitted to the facility, Westmoreland, as attorney in fact, executed the Admission Agreement on behalf of Chapman. This agreement contained a number of provisions outlining the duties and responsibilities of Chapman, of which the payment of monthly fees was only one item. Second, any analysis of mutuality must be based upon the conditions existing at the time that the Arbitration Agreement was entered into, and not retroactively. *See Weaver*, 187 N.C. App. at 212, 652 S.E.2d at 712 ("The question of unconscionability is determined as of the date the contract was executed.").

It is clear, from the above-recited findings contained in the trial court's order, that the trial court viewed the one-sidedness of the Arbitration Agreement retroactively rather than at the time of its execution.

We hold that the Arbitration Agreement was not one-sided. The trial court erred in concluding to the contrary.

### c.  Cost-shifting Provision of the Agreement

The trial court found that:

> The agreement provides that each side bear their own costs associated with the arbitration and that the prevailing party is entitled to recover reasonable attorney's fees and costs actually incurred. These provisions, in particular the "loser pays" provision, present unacceptable risks for a person of Plaintiff's limited financial means. The cost-shifting "losers" pays" provision alone would deter a claimant in her financial position from seeking to vindicate rights and renders the agreement substantively unconscionable.

A review of the relevant provisions of the arbitration agreement reveals that this finding by the trial court is without factual or legal basis.[2] The agreement contains two provisions pertaining to costs

---

2. The trial court has embedded a conclusion of law in its "findings fact." We accord no deference to these legal conclusions. *See supra* Part III.A.

and attorney's fees. In paragraph 2, the agreement provides that: "[t]he parties agree to bear their own attorneys' fees and costs associated with the **arbitration** proceedings." In paragraph 3 of the agreement, it was agreed that: "[t]he prevailing party in the **arbitration** proceeding or in any legal proceedings connected to the **arbitration** proceeding or this **Arbitration Agreement** shall be entitled to recover any reasonable attorneys' fees and costs that are actually incurred as a result."[3]

The portion of the *Tillman* plurality opinion dealing with prohibitively high arbitration costs is the centerpiece of its substantive unconscionability analysis. It focused upon the trial court's findings that the costs of arbitration, as compared to the actual amount in controversy, effectively precluded the plaintiffs from obtaining legal representation and pursuing their claims. The plurality stated, "[T]he combination of the loser pays provision, the *de novo* appeal process, and the prohibition on joinder of claims and class actions creates a barrier to pursuing arbitration that is substantially greater than that present in the context of litigation." *Tillman*, 362 N.C. at 106, 655 S.E.2d at 372.

In the instant case, the trial court focused upon the cost-shifting provisions in isolation, rather than as part of a broader analysis focusing on whether the cumulative effects of various provisions in the agreement create a substantial barrier to a plaintiff pursuing his or her claims. Rather than focusing on the cost-shifting provision in isolation, the *Tillman* plurality, citing an opinion from the Fourth Circuit Court of Appeals, focused upon the cost differential between litigation and arbitration: "[I]n order to find unenforceability due to excessive costs, the cost differential between litigation and arbitration must be so great that it deters individuals from bringing claims under the arbitration clause." *Id.* at 105, 655 S.E.2d at 372 (citing *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001)).

In *Tillman*, there were detailed findings of fact by the trial court that documented the average daily rate of AAA arbitrator compensation in North Carolina to be $1225. *Id.* at 98, 655 S.E.2d at 367. The trial court in *Tillman* also documented that the amount of the single-premium credit life and disability insurance premiums charged to the

---

3. The provisions regarding fees and costs could be construed to be in conflict. The trial court and the parties have treated them as establishing a "loser-pays" provision. We treat them in the same manner.

plaintiffs were $2064.75 and $4208.75, respectively, thus limiting the plaintiffs' prospective recoveries. *Id.* at 99, 655 S.E.2d at 368. Based upon these findings, the plurality opinion agreed with the conclusion of the trial court that it was "unlikely that any attorneys would be willing to accept the risks attendant to pursuing [these] claims." *Id.*

In contrast, the order of the trial court in the instant case is devoid of any findings of fact as to the potential cost of arbitration as compared to litigation. Rather, we are left with the trial court's conclusory language that the cost-shifting "provision alone would deter a claimant in her financial position from seeking to vindicate rights and renders the agreement substantively unconscionable." Plaintiff failed to establish the difference in the cost of arbitration and the cost of litigating her claims in court. Thus, she has also failed to establish that there is a differential that is so great that it deterred her from bringing the claim in an arbitration proceeding.

We further note that there is a significant difference between the claim for wrongful death brought in the instant case and the claims of the plaintiff brought in *Tillman* based on single premium credit life and disability insurance with premiums less than $5000. In *Tillman*, the small amount of the claim compared to the costs of arbitration made it difficult to procure legal representation to prosecute the claims. In the instant case, the claim is for wrongful death, a substantial claim. The nature and size of the claim in the instant case is not a barrier to obtaining legal representation.

There is another significant distinction between this case and *Tillman*. In *Tillman*, the trial court found that due to their limited financial resources, the only way the plaintiffs would be able to prosecute their claims would be by entering into a contingency fee agreement. *Id.* at 105, 655 S.E.2d at 371. Because the damages sought by the plaintiffs were so low, under $4500 in each case, the trial court and the Supreme Court concluded it was unlikely that a lawyer would take the plaintiffs' claims on a contingency basis. *See id.* at 105, 655 S.E.2d at 371–72. Further, the plurality explained, "The likelihood that an attorney would take a case controlled by the arbitration clause at issue . . . [was] even less because the arbitration clause prohibit[ed] the joinder of claims and class actions. *Id.*

In the instant case, there are no such findings by the trial court. Because this is a wrongful death case, the barriers to representation found in *Tillman* are not present.

### d. Conclusion—Substantive Unconscionability

We hold that each of the grounds for substantive unconscionability found by the trial court are flawed. Plaintiff failed to meet her burden of proof to establish substantive unconscionability. The order of the trial court was in error and must be reversed.

### IV. Balancing Test of *Tillman* Concurring Opinion

[3] We have held that the trial court erred in concluding several factors supported findings of both procedural and substantive unconscionability under the analysis set forth in the *Tillman* plurality opinion. Because these findings were incorrect, the result will be the same if we apply the totality of the circumstances approach set forth in the concurring opinion. Plaintiff has failed to meet her burden of demonstrating that the "inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and [that] the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Id.* at 101–02, 655 S.E.2d at 369 (quoting *Brenner*, 302 N.C. at 213, 274 S.E.2d at 210).

### V. Conclusion

It is the public policy of North Carolina to favor arbitration. There is nothing inherently unconscionable about an arbitration agreement.

> People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.

*Blaylock Grading Co., LLP v. Smith*, 189 N.C. App. 508, 511, 658 S.E.2d 680, 682 (2008) (quoting *Gas House, Inc. v. Southern Bell Tel. & Tel. Co.*, 289 N.C. 175, 182, 221 S.E.2d 499, 504 (1976)), *overruled on other grounds by State ex rel. Utilities Com'n v. Southern Bell Tel. & Tel. Co.*, 307 N.C. 541, 299 S.E.2d 763 (1983).

WESTMORELAND v. HIGH POINT HEALTHCARE, INC.

[218 N.C. App. 76 (2012)]

There is no question that Westmoreland, as power of attorney for Chapman entered into the Arbitration Agreement. She now asks the courts to set aside that agreement because she would prefer to litigate her claim in the courts rather than through arbitration. The courts of this State will only set aside contractual agreements based upon unconscionability in a very rare case. Plaintiff has failed to meet her burden of establishing procedural and substantive unconscionability.

The ruling of the trial court denying defendant's motion to compel arbitration is reversed, and this matter is remanded to the trial court for entry of an order directing the parties to submit this matter to arbitration in accordance with the terms of the Arbitration Agreement.

REVERSED AND REMANDED.

Judges CALABRIA and BEASLEY concur.

RESIDENT AND FACILITY
## ARBITRATION AGREEMENT
*PLEASE READ CAREFULLY*

It is hereby understood and agreed by _High Point Healthcare Center_ (the "Facility") and _James Chapman_ (the "Resident" or the "Resident's Authorized Representative", together referred to as the "Resident") that, regardless of any other agreement or understanding between the Facility and the Resident, any and all controversies, claims, disputes, disagreements or demands of any kind (referred to as a "Claim" or "Claims") arising out of or relating to the Resident's Admission Agreement with the Facility (the "Admission Agreement") or any service or care provided to the Resident by the Facility shall be settled exclusively by binding arbitration. This means that the parties are waiving their right to a trial before a jury or a judge.

1.      Claims. For purposes of this Arbitration Agreement, a Claim shall include, without being limited to, a claim for payment, nonpayment, or refund for services rendered to the Resident by the Facility, violations of any right granted to the Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice, or any other claim based on any departure from accepted standards of medical or health care or safety whether sounding in tort or in contract.

*This Arbitration Agreement shall in no way, however, limit the Resident's right to file a grievance or complaint, formal or informal, with the Facility, the long-term care ombudsman, or any appropriate government agency. This Arbitration Agreement does not affect the Facility's duties with respect to the provision of care and treatment.*

2.      Proceeding. Any arbitration proceeding that takes place under this Arbitration Agreement shall follow the rules of the American Arbitration Association ("AAA") and any resulting decision shall be enforceable by a court of competent jurisdiction. The arbitration proceeding shall be conducted where the Facility is located or as close to the Facility as practical. The arbitration proceeding shall be conducted before one neutral arbitrator selected in accordance with the rules of the AAA. The parties agree to bear their own attorneys' fees and costs associated with the arbitration proceeding.

All claims related to the same incident, transaction, or related course of care or services, must be arbitrated in one arbitration proceeding. Any Claim that arose before the date that a notice of arbitration is given to the Facility or received by the resident must be presented in the arbitration proceeding for which notice is given or it shall be considered waived and forever barred.

3.      Awards. The Resident and the Facility agree that any damages awarded as a result of arbitration under this Arbitration Agreement shall be determined in accordance with state or federal law that is applicable to a comparable civil action, including any prerequisites to, credit against, or limitations on, such damages. The prevailing party in the arbitration proceeding or in any legal proceedings connected to the arbitration proceeding or this Arbitration Agreement shall be entitled to recover any reasonable attorneys' fees and costs that are actually incurred as a result.

Initials _H_ .                    1

## WESTMORELAND v. HIGH POINT HEALTHCARE, INC.

[218 N.C. App. 76 (2012)]

4.   Binding Effect. The parties intend that this Arbitration Agreement shall benefit and be binding upon the parties, their successors and assigns, including the agents, employees of the Facility, and anyone whose Claim is derived through or on behalf of the Resident, including, without being limited to, any parent, spouse, child, guardian, executor, administrator, legal representative, or heir of the Resident.

5.   Applicable Law. The Resident and the Facility acknowledge and agree that the Resident's Arbitration Agreement effects a transaction involving interstate commerce, therefore the enforcement of this Arbitration Agreement shall be governed by federal law, specifically, the Federal Arbitration Act, notwithstanding any contrary provision of the Admission Agreement or state law. Furthermore, the provisions of this Arbitration Agreement remain in effect after the Resident's Admission Agreement has been terminated.

6.   Severability. If any term or phrase of this Arbitration Agreement is held to be invalid or unenforceable by reason of law, this Agreement will be deemed amended to conform with such law and will otherwise remain in full force and effect, as it is the parties' intent to ensure that the dispute is resolved solely via arbitration.

7.   Right of Revocation. The Resident has the right to revoke the Arbitration Agreement within thirty (30) days of the signature of the Agreement. Such revocation must be made in writing and submitted to the appropriate, designated Company representative.

8.   Right To Consultation. The Resident understands that the Resident has the right to consult an attorney or his or her choice about this Arbitration Agreement and to receive and explanation or clarification from the Facility's admissions coordinator. The Resident is not required to sign this Arbitration Agreement in order to be admitted to or to remain in the Facility.

BY SIGNING THIS AGREEMENT, THE RESIDENT ACKNOWLEDGES THAT THE RESIDENT HAS HAD THE OPPORTUNITY TO READ THIS AGREEMENT OR IT HAS BEEN READ TO THE RESIDENT AND THE RESIDENT UNDERSTANDS ITS CONTENTS.

_____          *Carrie Moore* 7-18-6
Resident's Signature         Date        Facility's Authorized Agent   Date

                                         *Carrie Moore*
_____          _____
Printed Name of Resident                 Printed Name of Facility's Authorized Agent

*Nancy Westmoreland* 7-18-06
Resident's Authorized Representative   Date

*NANCy Westmoreland*
Printed Name of Resident's Authorized
Representative


Vers.01192004
Effective Feb. 1, 2004


Initials _____          2