IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-380

Filed: 2 June 2015

Orange County, No. 11 CVS 1428

JONATHAN WILNER, *et. al.*, and ALL OTHERS SIMILARLY SITUATED, Plaintiffs,

v.

THE CEDARS OF CHAPEL HILL, LLC, *et. al.*, Defendants.

Appeal by defendants from order entered 10 January 2014 by Judge William R. Pittman in Orange County Superior Court. Heard in the Court of Appeals 20 November 2014.

> *Ragsdale Liggett PLLC, by Benjamin R. Kuhn, Amie C. Sivon, and R. Michael Pipkin, for plaintiff-appellees.*
>
> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by James T. Williams, Jr., Jennifer K. Van Zant, and D.J. O'Brien III, for defendant-appellants.*
>
> *Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson, and Barringer & Sasser, LLP, by Brent D. Barringer and Robert H. Sasser, III, for amici curiae The Cypress of Charlotte and The Cypress of Raleigh.*

STEELMAN, Judge.

Where the provisions of an agreement between condominium residents and a continuing care retirement community were not unconscionable, and did not violate the prohibition against transfer fees in Chapter 39A of the North Carolina General

Statutes, or the provisions of the Marketable Title Act, Chapter 47B of the North Carolina General Statutes, the trial court erred in finding the agreements unenforceable. Where plaintiffs agreed to the payment of fees in a contract, the trial court erred in holding them unenforceable pursuant to an analysis of covenants running with the land. The trial court erred in entering an injunction without describing with particularity the acts being enjoined.

## I. Factual and Procedural Background

The Cedars of Chapel Hill, LLC (the Cedars) is a continuing care retirement community (CCRC) located in Chapel Hill, North Carolina. Residents at the Cedars purchase individual condominium units within the community, and pay an additional membership fee. This fee is calculated as ten percent of the gross purchase price of a housing unit, and is paid at closing as part of the purchase price. If a resident inherits the unit or receives it as a gift, the resident pays the fee, calculated as ten percent of the unit's fair market value. If the unit is resold, the ten percent fee is deducted from the gross sales price and paid at closing. The payment of this fee is clearly set forth in the membership agreement. Membership entitles residents to access to the common property of the Cedars, including a clubhouse and health center. Residents who become incapable of independent living may move into the health center, and remain eligible to use the facilities for the remainder of their lives.

In addition to the initial membership fee, members make monthly payments to the Cedars Club (the Club), which cover the cost of various amenities. These monthly payments include a payment to the Cedars for overhead expenses, which is described in the membership agreement, disclosure statements, declaration, and bylaws of the condominium association.

On 29 June 2011, Jonathan Wilner and Diane Wilner filed this lawsuit seeking: (1) a declaratory judgment that the covenants requiring membership and a membership fee, and requiring payment of an overhead fee, do not run with the land, and are therefore unenforceable; (2) a declaratory judgment that the preliminary membership fee is a "transfer fee" prohibited under N.C. Gen. Stat. § 39A-3; (3) a judgment that the preliminary membership fee violates the Marketable Title Act, N.C. Gen. Stat. § 47B; and (4) a temporary restraining order and preliminary injunction to prohibit the collection of the membership fee and overhead payment.[1] On 23 August 2011, the Wilners filed an amended complaint, joining as plaintiffs Edwin B. Hoel, Per Ole Hoel, and Linda Leekley (with Jonathan Wilner and Diane Wilner, plaintiffs). Plaintiffs' amended complaint included additional factual allegations, and an additional cause of action for breach of the declaration and bylaws of the condominium association. On 7 November 2011, plaintiffs filed a motion for

---

[1] Plaintiffs brought additional claims, but dismissed them two days before the hearing on their motion for class certification.

class certification. On 24 August 2012, the trial court granted plaintiffs' motion to certify a class.[2]

The parties each filed motions for summary judgment. Plaintiffs' summary judgment motion also included new language not previously used in their complaint, alleging that the membership agreements were unconscionable, and seeking a permanent injunction.

On 10 January 2014, the trial court granted summary judgment in favor of plaintiffs as to plaintiffs' claims asserting that the covenants were unenforceable, that they violated Chapter 39A of the North Carolina General Statutes, and that they violated N.C. Gen. Stat. § 47B, the Real Property Marketable Title Act, and plaintiffs' request for a temporary restraining order and preliminary injunction. The trial court denied defendants' motions for summary judgment. This order did not address the unconscionability language contained in plaintiffs' motion for summary judgment.

Defendants appeal. On 28 January 2014, the trial court granted defendants' motion to stay judgment pending appeal, and certified its order to this Court pursuant to Rules 54 and 62 of the North Carolina Rules of Civil Procedure.

## II. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue

---

[2] The class action is not the subject of this appeal.

as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

### III. Enforceability of Membership Agreement

In their first argument, defendants contend that the trial court erred in ruling that the membership fee and overhead payments were unenforceable. We agree.

Because the order did not specify the basis by which the trial court held the fee and payments unenforceable, we examine in turn each of the various arguments made by plaintiffs at the summary judgment hearing before the trial court.

### A. Unconscionability

Plaintiffs alleged in their motion for summary judgment that the contracts they signed were unconscionable. In order to establish unconscionability, plaintiffs had to show both procedural unconscionability and substantive unconscionability. *Westmoreland v. High Point Healthcare Inc.*, 218 N.C. App. 76, 80, 721 S.E.2d 712, 717 (2012).

Procedural unconscionability involves "bargaining naughtiness in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." *Id*. at 81, 721 S.E.2d at 717 (quotations and citations omitted). Plaintiffs, raising this argument in their motion for summary judgment, contended that:

> [T]he bargaining power between the Plaintiffs and Defendants . . . was unquestionably unequal in that the

> Plaintiffs as a whole are relatively unsophisticated in terms of the complex real estate and financial machinations at play while contracting with the Defendants who engaged counsel experienced in complex real property transactions and condominium governance to draft the covenant clauses requiring payment of the Challenged Fees, along with the numerous other documents such as Condo Bylaws, Membership Agreements, Purchase and Sale Agreements, Resale Purchase and Sale Agreements, Guarantees, Indemnities, each of which include detailed provisions as to the payment and collection of the Challenged Fees.

We find that these contentions were insufficient to establish procedural unconscionability. The contracts at issue were signed at a real estate closing, meaning that plaintiffs had counsel present. The contracts had detailed, bolded notes in the margins, explaining what each contract provision entailed. Plaintiffs did not allege that they were rushed through the process, nor that they were tricked or deprived of opportunity to speak with counsel or consider their options; plaintiffs alleged only that defendants were more sophisticated and drafted the contracts to their own benefit. This alone does not rise to the level of procedural unconscionability. We held in *Westmoreland* that "bargaining inequality alone generally cannot establish procedural unconscionability. Otherwise, procedural unconscionability would exist in most contracts between corporations and consumers." *Id.*

Substantive unconscionability "refers to harsh, one-sided, and oppressive contract terms." *Id.* at 84, 721 S.E.2d at 719 (quotations and citations omitted). The

terms must be "so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Brenner v. Little Red Sch. House Ltd.*, 302 N.C. 207, 213, 274 S.E.2d 206, 210 (1981). Plaintiffs, in raising this issue, contended that the fees in question were "exorbitantly high," that the documents at issue were "decidedly one-sided in favor of the Company," and that plaintiffs lacked "ability . . . to negotiate any of the terms of the covenants and conditions in question in this case." Plaintiffs further noted that the market for CCRCs in Chapel Hill is very small, leaving few alternatives.

Again, we find plaintiffs' arguments unavailing. We recently held that "the times in which consumer contracts were anything other than adhesive are long past." *Torrence v. Nationwide Budget Fin.*, ___ N.C. App. ___, ___, 753 S.E.2d 802, 812 (quoting *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, ___, 179 L.Ed.2d 742, 755 (2011)), *review denied, cert. denied,* ___ N.C. ___, 759 S.E.2d 88 (2014). The mere fact that plaintiffs lacked the ability to negotiate contract terms does not create substantive unconscionability, nor does the fact that defendants were among the only providers of CCRC facilities. We hold that plaintiffs did not adequately demonstrate unconscionability as a matter of law, and that a genuine issue of material fact existed as to unconscionability, which precluded summary judgment.

## B. Transfer Fees

Plaintiffs also alleged that the membership fee constituted an unlawful transfer fee. Chapter 39A of the North Carolina General Statutes provides that a transfer fee violates North Carolina's public policy in favor of the alienability of real property "by impairing the marketability of title to the affected real property and constitutes an unreasonable restraint on alienation and transferability of property, regardless of the duration of the covenant or the amount of the transfer fee set forth in the covenant." N.C. Gen. Stat. § 39A-1(b) (2013). Chapter 39A defines a transfer fee as "a fee or charge payable upon the transfer of an interest in real property or payable for the right to make or accept such transfer, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price, or other consideration given for the transfer." N.C. Gen. Stat. § 39A-2(2).

However, there exists an exception to the provisions in Chapter 39A. Chapter 58, Article 64 of the North Carolina General Statutes deals with CCRCs. According to N.C. Gen. Stat. § 58-64-85:

> Facilities and providers licensed under this Article that also are subject to the provisions of the North Carolina Condominium Act under Chapter 47C of the General Statutes *shall not be subject to the provisions of Chapter 39A of the General Statutes*, provided that the facility's declaration of condominium does not require the payment of any fee or charge not otherwise provided for in a resident's contract for continuing care, or other separate contract for the provisions of membership or services.

N.C. Gen. Stat. § 58-64-85(b) (2013) (emphasis added). The specific provision of this statute overrules the general provision of Chapter 39A. Provided that the condominium declaration requires only fees outlined in other contracts signed by the resident, those fees are not barred by the provisions of Chapter 39A, even though they might otherwise be considered transfer fees.

In the instant case, all fees, including the membership fee, were described in detail in contracts and agreements signed by all residents of the Cedars. Because the declaration required only those fees which were provided for in contracts signed by the residents, they are exempt from the provisions of Chapter 39A prohibiting transfer fees.

## C. Marketable Title Act

Plaintiffs also alleged that the agreements at issue violate the Marketable Title Act. Chapter 47B of the North Carolina General Statutes codifies North Carolina policy in favor of quieting title when a person can demonstrate 30 years of continuous ownership of real property. *See* N.C. Gen. Stat. § 47B-1 *et seq* (2013).

The Marketable Title Act deals with actions to quiet title. In the instant case, there is no issue as to who owns the various units and common elements of the Cedars CCRC; these issues of ownership are explicitly detailed in the ownership agreements signed by the parties. The Act does not authorize a cause of action where, as here, parties are under a contractual obligation to pay fees pursuant to contract.

IV. Enforceability of Covenants

In their second argument, defendants contend that the trial court erred in finding the challenged covenants unenforceable. We agree.

All purchasers of property at the Cedars are required to sign a membership agreement, a separate document that is part of the purchase and sale agreement, at the time of closing. This agreement provides that all residents must be members, that membership is non-transferable, and that the membership fee is included in and deducted from the purchase price of a unit. Plaintiffs, in their initial complaint, which was incorporated by reference in their amended complaint, contend that they represent all persons who purchase, sell, or own a Unit at the Cedars, all who enter into a membership agreement with the Cedars, and all who are currently or may in the future enter into a membership agreement with the Cedars. We note that any such plaintiff, including the named plaintiffs in the instant case, would have in common the fact that either they or their buyers would have signed the membership agreement providing for the deduction of membership fees from the purchase price of a unit.

Plaintiffs contend that the covenants at issue do not run with the land, and are therefore unenforceable against subsequent purchasers. In *Runyon v. Paley*, the seminal case on covenants running with the land in North Carolina, our Supreme Court held that a party seeking to enforce a covenant as one running with the land

had to prove that the covenant in question "touches and concerns" the land, the existence of both horizontal and vertical privity of estate, and the intent of the original parties to create a covenant running with the land. 331 N.C. 293, 416 S.E.2d 177 (1992). Black's Law Dictionary defines a covenant running with the land as "[a] covenant ultimately and inherently involved with the land and therefore binding subsequent owners and successor grantees indefinitely." Black's Law Dictionary 421 (9th ed. 2009). It further notes that "[t]he most important consequence of a covenant running with the land is that its burden or benefit will thereby be imposed or conferred upon a subsequent owner of the property who never actually agreed to it. Running covenants thereby achieve the transfer of duties and rights in a way not permitted by traditional contract law." *Id.* (quoting Roger Bernhardt, *Real Property in a Nutshell* 212 (3rd ed. 1993)). It is this feature, the fact that a covenant running with the land can bind subsequent owners who did not agree to it, that distinguishes this type of covenant from a traditional contract.

Despite plaintiffs' contentions, the issue in this case is not one of a covenant running with the land. In the instant case, any potential buyer is required to sign a contract obligating himself to the payment of membership fees. As a result, this matter falls within the realm of traditional contract law, not the law of covenants running with the land. Under traditional contract law, parties that agree to contracts are bound by them. Plaintiffs, or their buyers, would be obligated to pay the

membership fees, not because of some covenant running with the land, but because they signed a document agreeing to pay the membership fees. Plaintiffs' contentions that the fees, once collected, need not be spent on improving or maintaining the physical facilities is irrelevant. Plaintiffs' contentions that these fees do not touch and concern the land, and that the fees are therefore an unenforceable covenant running with the land, are without merit.

## V. Entry of Injunction

In their third argument, defendants contend that the trial court's summary judgment order, which grants an injunction, violated Rule 65(d) of the North Carolina Rules of Civil Procedure. We agree.

Rule 65 of the North Carolina Rules of Civil Procedure provides, in relevant part:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts enjoined or restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice in any manner of the order by personal service or otherwise.

N.C. R. Civ. P. 65(d). This requirement is explicit and unambiguous; a trial court may not issue an injunction or restraining order without providing specific terms, "in reasonable detail, . . . the act or acts enjoined or restrained[.]" In the instant case,

the trial court entered a summary judgment order, granting summary judgment on four of plaintiff's claims, including its motion for an injunction, with no further explanation given. Specifically, the trial court's order as to plaintiffs' claims stated:

> Plaintiffs' motion for partial summary judgment is, allowed as to Plaintiffs' First, Third, Eighth and Tenth Claims for Relief as set forth in paragraphs numbered one through five in Plaintiff's motion.

In their motion for summary judgment, plaintiffs alleged with respect to their tenth claim for relief:

> Plaintiffs' Tenth Claim for Relief for Permanent Injunction enjoining and stopping, forever, the Defendants' past, present, and future efforts to implement and enforce certain affirmative covenants in the Declaration of Condominium of The Cedars of Chapel Hill requiring that Plaintiffs pay Defendants certain Challenged Fees, including but not limited to a Transfer Fee (aka the "Membership Fee"), the Corporate Overhead Payment Fee, and the Litigation Fee, in order that this Court may prevent the irreparable harm that the Plaintiffs have suffered, are suffering, and will continue in the future to suffer if a Permanent Injunction is not entered stopping the Defendants from collecting and enforcing their claimed right to such fees[.]

Plaintiffs' motion for summary judgment sought an expansive injunction, and the trial court's cursory handling of that issue did not meet the standard of "reasonable detail" concerning "the act or acts enjoined or restrained[.]" We hold that the trial court erred in granting an injunction in such a cursory manner.

### VI. Failure to Make Allegations Against Defendants

In their fourth argument, defendants contend that the trial court erred in entering its summary judgment order where plaintiffs had failed to make allegations against multiple defendants. Because we have held above that the trial court erred in entering summary judgment, we need not address this contention.

## VII. Conclusion

We hold that the trial court erred in determining, as a matter of law, that the contracts at issue were unconscionable, and that they violated the provisions of Chapter 39A and the Marketable Title Act. We further hold that the trial court erred in finding the covenants unenforceable. The trial court also erred in entering its injunction in a cursory manner, in violation of Rule 65 of the North Carolina Rules of Civil Procedure. We vacate the order granting summary judgment and the injunction, and remand this matter to the trial court for a trial by jury.

VACATED AND REMANDED.

Judges GEER and STEPHENS concur.