DAVIS, Judge.
In this breach of contract case, Wayne Preparatory Academy Charter School, Inc. ("WPA") appeals from the trial court's order granting partial summary judgment in favor of Banyan, GW LLC ("Banyan") and against WPA in the amount of $500,000. In its appeal, WPA contends that the trial court's order was erroneous because the contract at issue was unenforceable on several grounds and the liquidated damages provision that served as the basis for the court's award constituted an impermissible penalty clause. Based on our thorough review of the record and applicable law, we affirm the trial court's award against WPA.
Factual and Procedural Background
WPA is a non-profit corporation organized in 2009 for the purpose of opening a charter school in Wayne County, North Carolina. WPA subsequently submitted an application to the North Carolina State Board of Education ("SBE") for approval to open a charter school, but this application was denied.
At some point thereafter, Dr. Ken Benton, who was WPA's chairman at the time, met J. Richard Walker, the managing member of Banyan. Walker told Dr. Benton that he had "extensive experience in assisting North Carolina nonprofits apply for charters and in operating charter schools after their charters were approved." Walker further informed Dr. Benton that Banyan could "provide a turn-key job in preparing the application, finding funding for construction of facilities, and management of the operational aspects of the school after the charter was approved."
On 1 March 2013, WPA submitted a new application (the "Charter Application") to the SBE. The Charter Application was primarily prepared by Walker and others at Banyan but did not identify Banyan's relationship with WPA. In the section of the Charter Application asking whether "[t]he proposed school ... intend[s] to contract with an education service provider" - described as an "Educational Management Organization or Charter Management Organization" - the box labeled "Not Applicable" was marked. The SBE ultimately approved the Charter Application and issued a charter to WPA (the "WPA Charter").
In December 2013, Banyan and WPA entered into a "Support Services Agreement" ("SSA"), each page of which was initialed by both Dr. Benton and Walker. The SSA set out in detail a variety of support services that Banyan would provide to WPA for an annual fee of $258,000 plus $295 for each student enrolled at the school in excess of 700 students. It also contained a liquidated damages clause in the event that the contract was ever breached by WPA. The SSA provided that it would remain in effect until 2019 and was then subject to being renewed for additional years.
WPA also retained a company called Vertex III, LLC, ("Vertex III"), a subsidiary of Vertex Nonprofit Organization ("Vertex NP"), for assistance in obtaining funding for the school. WPA and Vertex III entered into a lease agreement on 10 February 2014, pursuant to which WPA would make monthly rental payments to Vertex III for its use of the property where the charter school was to be located.
WPA's charter was approved by the SBE effective 1 July 2014, and the school was opened to students the following month. After WPA had been operating the school for approximately one year, it received a letter dated 31 August 2015 from the Office of Charter Schools (the "OCS") - a division of the North Carolina Department of Public Instruction. The letter stated the OCS's concern that although the Charter Application had represented that WPA would not be contracting with an Educational Management Organization ("EMO"), Banyan was, in fact, providing "services equivalent of an EMO" such that WPA was in violation of its charter. This letter (the "OCS Letter") proceeded to inform WPA that it must either terminate its relationship with Banyan or amend the Charter Application "to show an agreement with [Banyan]." Finally, the OCS Letter noted that any amendment to the charter would be subject to approval by the SBE.
Less than two months later, Vertex III issued a notice of default to WPA under the terms of the lease agreement after WPA failed to pay its monthly rent. The notice of default provided that Vertex III would consider exercising its right under the agreement to be "appointed as interim manager" of WPA and enact "cost-saving measures, including ... the dismissal, termination, or cancellation of all third party vendors, employees, or independent contractors." Vertex III also made a new loan to WPA during October of 2015 and informed WPA "that the funds could be used for any legitimate purpose by the school, including negotiation or litigation with Banyan."
On 20 October 2015, the WPA board voted to terminate the SSA. Banyan's office manager was immediately escorted off of the school premises. No further payments were made by WPA to Banyan under the SSA.
On 6 January 2016, Banyan filed a complaint in Wake County Superior Court alleging breach of contract against WPA, its Board of Directors, and board members Sharon Thompson, John Ankeney, and Lucius J. Stanley (collectively the "WPA Defendants"). The complaint also asserted a claim for tortious interference with contract against Vertex III and Vertex NP. Vertex III and Vertex NP filed an answer and motion to dismiss on 10 March 2016, arguing, in part, that the action should be dismissed against Vertex NP pursuant to Rule 12(b)(2) of the North Carolina Rules of Civil Procedure for lack of personal jurisdiction. The WPA Defendants filed an answer on 15 March 2016, in which they raised a number of affirmative defenses, including that the SSA was unconscionable, contrary to public policy, and unenforceable as an illusory contract. In addition, the WPA Defendants asserted counterclaims against Banyan for fraud, "breach of fiduciary duty/constructive fraud," malicious prosecution, abuse of process, and unfair and deceptive trade practices.
On 10 March 2017, Vertex III filed a motion for summary judgment pursuant to Rule 56 as to Banyan's tortious interference with contract claim. Vertex III and Vertex NP also filed a motion to dismiss the tortious interference with contract claim pursuant to Rule 12(b)(6) and a motion for judgment on the pleadings as to that claim based on Rule 12(c).
The WPA Defendants filed a motion for summary judgment on 3 April 2017 in which they argued that the SSA was unenforceable as a result of the affirmative defenses contained in their answer. On 20 September 2017, Banyan filed a cross-motion for summary judgment, asserting that there was "no genuine issue of material fact that the contract provide[d] for liquidated damages of at least $500,000 for breach of contract" and that, for this reason, it was "entitled to a partial damage judgment of at least $500,000 against WPA."
On 25 September 2017, a hearing was held on the pending motions before the Honorable Carl R. Fox. The trial court entered an order on 6 November 2017, stating, in pertinent part, as follows:
There is no genuine issue of material fact that (a) WPA entered into a contract with Banyan ..., (b) WPA breached the contract by early termination not permitted by the terms of the contract, and (c) the contract provides for a minimum liquidated damages award of $500,000; and that therefore the Motion for Summary Judgment of WPA should be denied and the cross-motion for Partial Summary Judgment of Banyan should be granted in favor of Banyan on their claim of breach of contract against WPA, in the amount of $500,000 in liquidated damages.
The 6 November order also denied Vertex III's motion for summary judgment on the ground that genuine issues of material fact existed as to Banyan's claim against it. The WPA Defendants and Vertex III filed a joint notice of appeal on 9 November 2017.[1]
Analysis
I. Appellate Jurisdiction
As an initial matter, we must determine whether this appeal is properly before us. See Hous. Auth. of City of Wilmington v. Sparks Eng'g, PLLC , 212 N.C. App. 184, 187, 711 S.E.2d 180, 182 (2011) ("[A]n appellate court has the power to inquire into jurisdiction in a case before it at any time, even sua sponte ." (citation and quotation marks omitted) ).
"A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." Duval v. OM Hospitality, LLC , 186 N.C. App. 390, 392, 651 S.E.2d 261, 263 (2009) (citation omitted). Conversely, an order or judgment is interlocutory if it does not settle all of the issues in the case but rather "directs some further proceeding preliminary to the final decree." Heavner v. Heavner , 73 N.C. App. 331, 332, 326 S.E.2d 78, 80 (citation omitted), disc. review denied , 313 N.C. 601, 330 S.E.2d 610 (1985).
"Generally, there is no right of immediate appeal from interlocutory orders and judgments." Paradigm Consultants, Ltd. v. Builders Mut. Ins. Co. , 228 N.C. App. 314, 317, 745 S.E.2d 69, 72 (2013) (citation and quotation marks omitted). The prohibition against interlocutory appeals "prevents fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts." Russell v. State Farm Ins. Co. , 136 N.C. App. 798, 800, 526 S.E.2d 494, 496 (2000) (citation and brackets omitted).
However, there are two avenues by which a party may immediately appeal an interlocutory order or judgment. First, if the order or judgment is final as to some but not all of the claims or parties, and the trial court certifies the case for appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), an immediate appeal will lie. Second, an appeal is permitted under N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1) if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review.
N.C. Dep't of Transp. v. Page , 119 N.C. App. 730, 734, 460 S.E.2d 332, 334 (1995) (internal citations omitted).
A. The WPA Defendants' Appeal
The trial court's 6 November 2017 order does not contain a certification under Rule 54(b). Therefore, the WPA Defendants' appeal is proper only if they can demonstrate a substantial right that would be lost absent an immediate appeal. See Embler v. Embler , 143 N.C. App. 162, 166, 545 S.E.2d 259, 262 (2001) ("The burden is on the appellant to establish that a substantial right will be affected unless he is allowed immediate appeal from an interlocutory order." (citation omitted) ).
As our Supreme Court has noted, "the 'substantial right' test for appealability of interlocutory orders is more easily stated than applied." Waters v. Qualified Personnel, Inc. , 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978). As a result, the extent to which an interlocutory order affects a substantial right must be determined on a case-by-case basis. McCallum v. N.C. Coop. Extension Serv. , 142 N.C. App. 48, 50, 542 S.E.2d 227, 231 (citation omitted), appeal dismissed and disc. review denied , 353 N.C. 452, 548 S.E.2d 527 (2001).
This Court has held that a partial summary judgment order that includes an award of monetary damages against the appealing party affects a substantial right. See Wachovia Realty Invs. v. Housing, Inc. , 292 N.C. 93, 98-99, 232 S.E.2d 667, 671 (1977) (substantial right affected where trial court granted partial summary judgment against defendant and ordered payment of $204,603.55). Here, the trial court's 6 November 2017 order awarded Banyan $500,000 in damages on its breach of contract claim against the WPA Defendants. The order therefore affects a substantial right of the WPA Defendants, and their appeal is properly before us.[2]
B. Vertex III's Appeal
Although Vertex III appealed jointly with the WPA Defendants from the trial court's 6 November 2017 order, it has failed to present any substantive arguments in its appellate brief as to why the trial court's denial of its motion for summary judgment affected a substantial right or - for that matter - why the trial court's ruling was incorrect. Therefore, we conclude that Vertex III's appeal is not properly before us and must be dismissed. See Embler , 143 N.C. App. at 166-67, 545 S.E.2d at 262-63 (dismissing interlocutory appeal where appellant failed to argue that appeal implicated substantial right).
II. Award of Partial Summary Judgment Against the WPA Defendants
"On an appeal from an order granting summary judgment, this Court reviews the trial court's decision de novo ." Mitchell, Brewer, Richardson, Adams, Burge & Boughman v. Brewer , --- N.C. App. ----, ----, 803 S.E.2d 433, 443 (2017) (citation and quotation marks omitted), disc. review denied , 370 N.C. 693, 811 S.E.2d 161 (2018). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Premier, Inc. v. Peterson, 232 N.C. App. 601, 605, 755 S.E.2d 56, 59 (2014) (citation and quotation marks omitted).
It is well established that "[t]he moving party has the burden of demonstrating the lack of any triable issue of fact and entitlement to judgment as a matter of law. The evidence produced by the parties is viewed in the light most favorable to the non-moving party." Hardin v. KCS Int'l, Inc., 199 N.C. App. 687, 695, 682 S.E.2d 726, 733 (2009) (internal citations omitted). We have held that "[a]n issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." In re Alessandrini , 239 N.C. App. 313, 315, 769 S.E.2d 214, 216 (2015) (citation omitted).
The WPA Defendants assert several different arguments as to why the trial court erred in entering partial summary judgment in favor of Banyan. We address each argument in turn.
A. Effect of the OCS Letter
Initially, the WPA Defendants contend that the OCS Letter rendered the SSA null and void. We disagree.
The OCS Letter states, in pertinent part, as follows:
Although the agreement between WPA and Banyan Partners does not specify that Banyan is an Educational Management Company (EMO), Banyan Partners is providing the services equivalent of an EMO. OCS therefore finds that Wayne Preparatory Academy is in violation of the Charter Agreement and is now placed on Governance Cautionary Status. The school will remain on Governance Cautionary Status for thirty (30) calendar days during which the school must correct the identified issues. Failure to correct the issues within the thirty days will trigger a second warning and move the school to Governance Probationary Status.
The WPA approved charter application states, "Not Applicable" for intention to contract with an education service provider; as a result, the contract with Banyan Partners is a violation of the charter agreement. The Charter Agreement under Section 4 Charter School Governing Board states ... "The Nonprofit shall not enter into or terminate an agreement for comprehensive management services without the prior, explicit approval of the SBE."
In order to comply with the approved charter application, the school must do one of the following:
1. Terminate the relationship with Banyan Partners and provide documentation that the relationship has been terminated.
2. Amend the charter application to show an agreement with the management company, Banyan Partners. This must also be approved by the State Board of Education.
(Emphasis omitted.)
We are unable to agree that the OCS Letter renders the entire SSA invalid and unenforceable. In interpreting the SSA, we are guided by the following principles basic to the law of contracts:
The heart of the contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time. The intention of the parties is gleaned from the entire instrument and not from detached portions.
It is well settled that a contract is construed as a whole. Individual clauses are to be considered in context. All parts of the contract will be given effect if possible.
Dysart v. Cummings , 181 N.C. App. 641, 647, 640 S.E.2d 832, 836 (internal citations and quotation marks omitted), aff'd per curiam , 361 N.C. 580, 650 S.E.2d 593 (2007).
Our review of the SSA in its entirety reveals the clearly expressed desire of the parties that the contract be given effect to the fullest extent possible. In its recitals, for example, the SSA provides that "WPA and [Banyan] desire to create an enduring, long-term collaborative educational partnership whereby WPA [and Banyan] will work together ... to bring educational excellence and innovation to the Wayne County, North Carolina area[.]" The SSA - which comprises 69 pages - proceeds to set out a detailed description of the parties' contractual relationship.
Although the OCS Letter identified a problem with the Charter Application, it did not require WPA to terminate its contract with Banyan. While the severance of the parties' contractual relationship was one option listed in the OCS Letter, the letter also gave WPA the additional option of simply amending the Charter Application to identify WPA's relationship with Banyan. It is undisputed that WPA never sought to avail itself of the latter option. Instead, its board members voted to unilaterally terminate the SSA.
In their appellate brief, the WPA Defendants specifically direct our attention to the following provision of the SSA (the "Compliance Provision"):
Compliance with charter. [Banyan] will not act in a manner which will cause the School to be in breach of its Charter with the SBE. Any requirement under this Agreement that would cause the School to breach its Charter is null and void.
The WPA Defendants argue that the Compliance Provision established a condition precedent to the SSA becoming effective - namely, that the "contract and any requirement of it be in compliance with, and not in violation or breach of, the charter as issued." This Court has described the law concerning conditions precedent as follows:
A condition precedent is an event which must occur before a contractual right arises, such as the right to immediate performance. In negotiating a contract the parties may impose any condition precedent, a performance of which condition is essential before the parties become bound by the agreement. Breach or non-occurrence of a condition prevents the promisee from acquiring a right, or deprives him of one, but subjects him to no liability.
Everts v. Parkinson , 147 N.C. App. 315, 329, 555 S.E.2d 667, 676 (2001) (internal citations and quotation marks omitted).
We disagree with the assertion of the WPA Defendants that the Compliance Provision set out a condition precedent that was required to be met before any contractual rights and obligations would arise under the SSA. The first sentence of the Compliance Provision simply prohibited acts by Banyan in the course of performing its duties under the SSA that would jeopardize the WPA Charter. The second sentence merely provided for the severance of any specific provisions of the SSA that would violate the charter. Neither sentence can properly be construed as contemplating the voiding of the SSA in its entirety based on a failure to identify the contractual relationship between Banyan and WPA in the Charter Application.
The WPA Defendants also argue that because "the SSA was executed before the charter was issued to WPA," the issuance of a charter was also a "condition precedent to the validity and enforceability of the contract" given that "with no charter there could be no school and no services to render or be paid for." This argument, however, ignores the fact that the SBE did approve the Charter Application and that WPA began operating as a school pursuant to the charter in August of 2014. Thus, even viewing the SBE's approval of the Charter Application as a condition precedent to the SSA, the condition was satisfied, at which time both "parties [became] bound by the agreement." Everts , 147 N.C. App. at 329, 555 S.E.2d at 676.[3]
B. Illusory Contract
Next, the WPA Defendants assert that the SSA is invalid because Banyan's promise to perform thereunder was illusory - and thus insufficient as legal consideration - due to the discretion retained by Banyan regarding the performance of its duties under the contract. We disagree.
One of the elements of a valid contract is a promise, which has been defined as an assurance that a thing will or will not be done. ... An apparent promise which, according to its terms, makes performance optional with the promisor no matter what may happen, or no matter what course of conduct in other respects he may pursue, is in fact no promise. Such an expression is often called an illusory promise.
Bowman v. Hill , 45 N.C. App. 116, 117-118, 262 S.E.2d 376, 377 (1979) (internal citations and quotation marks omitted).
While a promise may be considered illusory where a promisor reserves "an unlimited right to determine the nature or extent of his performance," Wellington-Sears & Co. v. Dize Awning & Tent Co. , 196 N.C. 748, 752, 147 S.E. 13, 15 (1929), individuals are free to enter into contracts that confer "on one party a discretionary power affecting the rights of the other," Mezzanotte v. Freeland , 20 N.C. App. 11, 17, 200 S.E.2d 410, 414 (1973). In such contracts, the "discretion must be exercised in a reasonable manner based upon good faith and fair play." Id. Indeed, it is well established that all contracts in North Carolina contain an "implied covenant of good faith and fair dealing that neither party will do anything [that] injures the right of the other to receive the benefits of the agreement." Bicycle Transit Auth., Inc. v. Bell , 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (citation and quotation marks omitted). See Weyerhaeuser Co. v. Godwin Bldg. Supply Co. , 40 N.C. App. 743, 746, 253 S.E.2d 625, 627 (1979) ("[A] party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement.").
Article III of the SSA is titled "Duties and Obligations of [Banyan]" and contains over ten pages setting out a wide range of tasks to be performed by Banyan under the contract. In addition, Schedule B to the SSA consists of an "Itemization of Support Services," which lists forty-five separate services Banyan was to perform under the SSA. These services are divided into eight categories, including "Accounts Payable," "Payroll," "Employee Benefits," "General Ledger/Financial Reporting," "Budget Planning and Management," "Annual Audit Planning," "Other Financial, Budget and Planning Functions," and "Professional and School Development Services."
The WPA Defendants point, however, to the following provision of the SSA that sets out the standard to be used for assessing Banyan's performance of its duties:
Notwithstanding any other obligations of [Banyan] under this Agreement all [of Banyan's] services shall be performed on a Reasonable Efforts Basis where "Reasonable Efforts Basis" for purposes of this Agreement shall mean those individual or cumulative services, functions or activities by [Banyan] or its affiliates where reasonable efforts are made by [Banyan] to perform a given service, function or activity where no material additional time, costs or liability would be incurred by [Banyan] or its affiliates when considered singularly or cumulatively in the sole discretion of [Banyan] or its affiliates. Reasonable Efforts Basis shall in no manner mean any form of guaranteed results, benchmarks or completion dates, guaranteed funds or financing or any extraordinary services, functions or activity on the part of [Banyan] or its affiliates to provide services, funds, events, completions or any other function except on a reasonable and affordable basis in the sole and absolute discretion of [Banyan] and its affiliates (collectively "Reasonable Efforts Basis").
While this provision clearly does provide a degree of discretion to Banyan regarding the performance of its contractual duties, we cannot agree with the WPA Defendants that it converts the SSA into an illusory contract. The WPA Defendants argue that Banyan's discretion under the contract is limitless, but North Carolina law - as noted above - provides that such discretion is limited by the implied duty of good faith imposed by law on all parties to a contract.
We find instructive this Court's decision in Mezzanotte , which concerned a contract for the sale of land by the defendant that was contingent upon the plaintiffs' "ability to obtain financing satisfactory to themselves." See Mezzanotte , 20 N.C. App. at 15, 200 S.E.2d at 414. The defendants argued that this contingency rendered illusory the promise by the plaintiff to purchase the land. Id. at 17, 200 S.E.2d at 414. This Court held that the promise was not illusory, explaining as follows:
It seems clear that the parties in signing the contract of sale intended to be mutually bound to comply with its terms. They understood that plaintiffs would make an honest good faith effort to acquire financing satisfactory to themselves .... The contract implies that plaintiffs would in good faith seek proper financing ... and that such financing in keeping with reasonable business standards could not be rejected at the personal whim of plaintiffs but only for a satisfactory cause. Where a contract confers on one party a discretionary power affecting the rights of the other, this discretion must be exercised in a reasonable manner based upon good faith and fair play.
Id.
Here, as in Mezzanotte , Banyan's discretion was required to be exercised in good faith. Therefore, we are satisfied that Banyan's obligation to perform under the SSA was not illusory.
C. Unconscionability
In their next argument, the WPA Defendants contend that the SSA is unenforceable because it is both substantively and procedurally unconscionable. Whether a contract is unconscionable "is a question of law that is reviewed de novo on appeal." Westmoreland v. High Point Healthcare Inc. , 218 N.C. App. 76, 79, 721 S.E.2d 712, 716 (2012) (citation omitted). This Court has held that
[u]nconscionability is an affirmative defense, and the party asserting it bears the burden of establishing it. For a court to conclude that a contract is unconscionable, the court must determine that the agreement is both substantively and procedurally unconscionable. The question of unconscionability is determined as of the date the contract was executed.
Emerald Portfolio, LLC v. Outer Banks/Kinnakeet Assocs., LLC , 249 N.C. App. 246, 253, 790 S.E.2d 721, 726 (2016) (emphasis added, internal citations and quotation marks omitted). "Procedural unconscionability involves bargaining naughtiness in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." Wilner v. Cedars of Chapel Hill, LLC , 241 N.C. App. 389, 392, 773 S.E.2d 333, 336 (citation and quotation marks omitted), disc. review denied , 368 N.C. 355, 777 S.E.2d 67 (2015).
The WPA Defendants assert that the SSA was procedurally unconscionable because (1) "Banyan represented itself as a trustworthy and experienced provider having the interests of WPA at heart, such that WPA need not" hire outside counsel to review the terms of the SSA; and (2) Banyan "was in a superior bargaining position" based on the WPA Board's "limited experience in the operations and governance of a charter school."
While the existence of bargaining inequality is a factor we must consider in determining whether procedural unconscionability existed in the formation of a contract, "bargaining inequality alone generally cannot establish procedural unconscionability. Otherwise, procedural unconscionability would exist in most contracts between corporations and consumers." Westmoreland , 218 N.C. App. at 81, 721 S.E.2d at 717. While one party's advice to the other contracting party to seek independent legal representation weighs against a finding of procedural unconscionability, id. at 81, 721 S.E.2d at 718, a party's "lack of legal representation does not impute a lack of capacity amounting to procedural unconscionability," Johnson v. Johnson , --- N.C. App. ----, ----, 817 S.E.2d 466, 474 (2018). A finding that there was a breach of a fiduciary or other special duty existing between the contracting parties can, however, support a finding of procedural unconscionability. See King v. Bryant , 369 N.C. 451, 469, 795 S.E.2d 340, 352, cert. denied , --- U.S. ----, 199 L.Ed. 2d 233 (2017) (holding that contract "obtained as the result of a breach of fiduciary duty" that benefitted the breaching party was unconscionable).
We conclude that the SSA is not procedurally unconscionable. While Banyan may have had more experience in the organization and operation of charter schools than WPA's board members, there is nothing in the record to suggest that the board members were anything other than competent adults who were fully capable of negotiating and executing a contract of this type. Nor is there any basis before us to conclude that a fiduciary relationship or some other special relationship existed between Banyan and WPA.
Although Banyan told Dr. Benton that WPA need not undergo the expense of engaging counsel, WPA's board members were free to disregard this suggestion and to instead seek legal representation before executing the SSA. WPA thus did not have a "lack of meaningful choice" as to any aspect of the SSA, including the decision whether to obtain review of the contract by independent counsel. Wilner, 241 N.C. App. at 392, 773 S.E.2d at 336. Moreover, the WPA Defendants have not alleged that WPA's board members lacked the opportunity to read the SSA. Nor would any basis exist for such a contention as Dr. Benton's initials are present at the top of each of the 69 pages of the SSA.
Because we determine that there was no procedural unconscionability in the formation of the SSA, we need not reach the issue of whether the SSA was substantively unconscionable. As noted above, North Carolina law requires a contract to be both procedurally and substantively unconscionable in order for it to be deemed unenforceable on unconscionability grounds. See Emerald Portfolio, LLC , --- N.C. App. at ----, 790 S.E.2d at 727 (while "there is no bright-line rule as to just how much procedural or substantive unconscionability must be shown .... some of each is necessary to demonstrate unconscionability").
D. Liquidated Damages
In their final argument, the WPA Defendants argue that the liquidated damages provision contained within the SSA constitutes an unenforceable penalty clause. Once again, we disagree.
Our Supreme Court has distinguished between liquidated damages clauses in contracts (which are enforceable) and penalty clauses (which are not enforceable). Liquidated damages are defined as "a sum which a party to a contract agrees to pay ... if he breaks some promise, and which, having been arrived at by a good-faith effort to estimate in advance the actual damage which would probably ensue from the breach, are legally recoverable ... if the breach occurs." Knutton v. Cofield , 273 N.C. 355, 361, 160 S.E.2d 29, 34 (1968) (emphasis omitted). "Under the fundamental principle of freedom of contract, the parties to a contract have a broad right to stipulate in their agreement the amount of damages recoverable in the event of a breach, and the courts will generally enforce such an agreement[.]" Seven Seventeen HB Charlotte Corp. v. Shrine Bowl of the Carolinas, Inc. , 182 N.C. App. 128, 130-31, 641 S.E.2d 711, 713 (2007).
Conversely, "[a] penalty is a sum which a party similarly agrees to pay or forfeit ... but which is fixed, not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach, or as security ... to insure that the person injured shall collect his actual damages." Knutton , 273 N.C. at 361, 160 S.E.2d at 34 (emphasis omitted). This Court has held that "[t]he general rule is that the amount stipulated in a contract as liquidated damages for a breach, if not a penalty, may be recovered in the event of a breach even though no actual damages are suffered." E. Carolina Internal Med., P.A. v. Faidas , 149 N.C. App. 940, 946, 564 S.E.2d 53, 56, aff'd per curiam , 356 N.C. 607, 572 S.E.2d 780 (2002).
Whether a stipulated sum will be treated as a penalty or as liquidated damages may ordinarily be determined by applying one or more aspects of the following rule: A stipulated sum is for liquidated damages only (1) where the damages which the parties might reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty and (2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach or is reasonably proportionate to the damages which have actually been caused by the breach.
The question whether damages are difficult [to] ascertain[ ] is to be determined by a consideration of the status of the parties at the time they enter into the contract, and not at the time of the breach. Where the damages resulting from a breach of contract cannot be measured by any definite pecuniary standard, as by market value or the like, but are wholly uncertain, the law favors a liquidation of the damages by the parties themselves; and where they stipulate for a reasonable amount, the agreement will be enforced.
Green Park Inn, Inc. v. Moore , 149 N.C. App. 531, 538-39, 562 S.E.2d 53, 58 (2002) (internal citations, quotation marks, and brackets omitted).
"Whether a liquidated damages amount is a reasonable estimate of the damages that would likely result from a default is a question of fact." Id. at 540, 562 S.E.2d at 59 (citation omitted). This Court has determined that the party seeking to invalidate a liquidated damages provision bears the burden of showing that the provision is unenforceable. Seven Seventeen , 182 N.C. App. at 132, 641 S.E.2d at 714.
In Knutton , our Supreme Court noted the modern trend toward enforcing liquidated damages clauses:
While early opinions tended to regard stipulations in contracts purporting to fix sums to be paid in the event of breach as penalties rather than as liquidated damages, and courts were slow to enforce stipulated sums, it is doubtful that there is any longer sufficient authority to support a rule that the courts tend to regard such provisions as penalties. In fact, some courts have given expression to the opposite rule and have said that the modern tendency is to look upon stipulated sums with candor, if not with favor. Ordinarily, even a court of equity will not relieve against a stipulation for liquidated damages.
Knutton , 273 N.C. at 361-62, 160 S.E.2d at 35.
The clause in the SSA at issue states as follows:
Liquidated Damages: WPA acknowledges and agrees that [Banyan] has expended significant time, money, expertise and resources over several years in assisting WPA thus far in obtaining the Charter and [Banyan] will otherwise continue, in [Banyan]'s sole discretion, to expend significant front-end loaded time, money, expertise and resources, relative to the timing of compensation amounts due [Banyan] under this Agreement, in assisting WPA in preparing, starting, stabilizing and enhancing the School over and above what is required to operate the School that culminate in the net present value of [Banyan's] start-up services which are otherwise difficult to precisely estimate at the inception of this Agreement (collectively "[Banyan] Investment"). Both WPA and [Banyan] have independently assessed such start-up costs by [Banyan] and hereby stipulate that the net present value of such [Banyan] Investment is five hundred thousand dollars ($500,000). Notwithstanding any other provisions in this Agreement, in the event WPA does not pay [Banyan] any amounts due and governed under this Agreement except for gross malfeasance or gross neglect by [Banyan], WPA shall pay liquidated damages to [Banyan] in the greater amount of: 1) the [Banyan] Investment of five hundred thousand dollars ($500,000) plus all servicing costs incurred by [Banyan] in such matter or 2) the gross remainder of any amounts payable under this Agreement through the Termination Date plus all Servicing Costs incurred by [Banyan] in such matter.
Here, the WPA Defendants have failed to meet their burden of proving that the liquidated damages provision in the SSA is unenforceable. First, they assert that "[t]here is nothing about the contractual arrangement to suggest any difficulty in determining the damages Banyan would have been due for breach of the SSA." This argument is inconsistent with the language of the contract - which bears the initials of WPA's representative on every page - specifically stating that the parties agreed to the liquidated damages provision because at the time of the formation of the SSA it was "difficult to precisely estimate" the value of the start-up services being provided by Banyan to WPA.
Based on our careful review of the SSA in its entirety as well as the additional documents contained in the record, we do not believe this Court possesses an adequate basis to second-guess the parties' joint agreement at the time the SSA was executed that a precise determination of Banyan's monetary investment in the school would be difficult to calculate - thereby rendering uncertain the damages Banyan would incur from a breach of the contract by WPA.
With regard to the reasonableness of the $500,000 sum set out in the liquidated damages provision, the WPA Defendants point to a separate provision of the SSA contained in Article V (bearing the title "Financial Arrangements"), which states that Banyan had "earned its expense retainer of $80,000 for its start-up expenses .... Such fee is earned at the time this Agreement is executed to defray ... start-up costs[.]" Based on this provision, the WPA Defendants argue, the SSA essentially capped Banyan's "start-up costs" at $80,000 such that the $500,000 figure contained in the liquidated damages clause is in conflict with the earlier calculation.
We are unable to agree that such a conflict exists between these provisions. The $80,000 figure referenced in Article V simply represented a retainer to "defray" Banyan's start-up costs. It did not purport to preclude Banyan from accruing additional start-up expenses. Moreover, the liquidated damages clause expressly references the fact that Banyan had not only previously incurred start-up costs but would, in fact, continue to do so. Thus, the payment of the $80,000 retainer did not in any way foreclose the possibility that Banyan would incur additional expenses in this regard. Furthermore, by signing the SSA, WPA acknowledged that it had "independently assessed" whether $500,000 was an appropriate sum. See Bradshaw v. Milliken , 173 N.C. 432, 435, 92 S.E.2d 161, 163 (1917) ("[T]he parties [to a contract], being informed as to the facts and circumstances, are better able than any one else to determine what would be a fair and reasonable compensation for a breach[.]").[4]
Defendants have therefore failed to demonstrate the existence of any genuine issue of material fact that would preclude the enforcement of the liquidated damages clause as a matter of law. See WFC Lynnwood I LLC v. Lee of Raleigh, Inc. , --- N.C. App. ----, ----, 817 S.E.2d 437, 442 (2017) (trial court properly enforced liquidated damages provision where defendants did not meet their burden of demonstrating that damages from breach were easy to ascertain or that amount set out in liquidated damages clause was unreasonable).
* * *
It is clear that a number of the provisions in the SSA are written in a manner that benefits Banyan. But this Court does not possess the authority to save a party from a contract that - in hindsight - may seem ill-advised. Indeed, it is axiomatic that courts may not "relieve one who can read and write from liability upon a written contract, upon the ground that he did not understand the purport of the writing, or that he has made an improvident contract, when he could inform himself and has not done so." Johnson , --- N.C. App. at ----, 817 S.E.2d at 474 (citation omitted).
Parties are equally free to enter into agreements both wise and unwise. Courts have the power to declare contracts unenforceable only in rare circumstances - none of which exist in the present case. Accordingly, we must affirm the trial court's award of partial summary judgment to Banyan.
Conclusion
For the reasons stated above, we conclude that the trial court properly granted partial summary judgment in favor of Banyan and denied the WPA Defendants' motion for summary judgment. We dismiss the appeal of Vertex III.
AFFIRMED IN PART; DISMISSED IN PART.
Report per Rule 30(e).
Judge MURPHY concurs.

The trial court later entered an order on 10 December 2017 dismissing Banyan's claim against Vertex NP for lack of personal jurisdiction. The 10 December 2017 order is not at issue in this appeal.

The WPA Defendants also argue that the order affects a substantial right "in that the order prevents the defendant WPA from presenting any of its affirmative defenses." However, our review of the record - including the transcript of the 25 September 2017 motions hearing - reveals that the WPA Defendants not only had ample opportunity to argue their affirmative defenses at the summary judgment stage but actually did so. Although the 6 November 2017 order does not expressly reference the WPA Defendants' affirmative defenses, the transcript of the motions hearing shows that their affirmative defenses were, in fact, argued before the trial court. Thus, we construe the 6 November 2017 order as reflecting the trial court's implicit rejection of Banyan's affirmative defenses.

The WPA Defendants also make a cursory argument in their appellate brief that the SSA is unenforceable because it is "a contract against public policy." Specifically, they argue that because (1) North Carolina law requires that charter schools "operate under the written charter signed by the State Board and the applicant,"N.C. Gen. Stat. § 115C-218.15(c) (2017) ; and (2) the OCS Letter demonstrates that WPA was in violation of its charter as a result of the SSA, the SSA was an illegal contract contrary to North Carolina's public policy. See Glover v. Rowan Mut. Fire Ins. Co. , 228 N.C. 195, 198, 45 S.E.2d 45, 47 (1947) ("[A]greements are against public policy when they tend to the violation of a statute." (citation omitted) ). However, as discussed above, the OCS Letter did not state that WPA was required to terminate the SSA in order to come into compliance with applicable law. Thus, the WPA Defendants have failed to show that the SSA violated North Carolina public policy.

The WPA Defendants also argue that the second prong of the liquidated damages provision - providing that "the gross remainder of any accounts payable" under the SSA through the stated termination date of the contract be payable as liquidated damages if said amount was greater than $500,000 - constitutes an impermissible penalty for breach of the contract rather than an enforceable liquidated damages amount. However, this argument is moot given that the trial court awarded only $500,000 to Banyan under the liquidated damages clause and Banyan did not seek further damages under this second prong.